

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-25-2003

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4303

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Chen v. Atty Gen USA" (2003). *2003 Decisions.* Paper 93.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/93

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———————

No. 02-4303

———————

ZHU FENG CHEN,
                    Petitioner

v.

U.S. ATTORNEY GENERAL,
                    Respondent

———————

Petition for Review of an Order
of the Board of Immigration Appeals
(A77-027-169)

———————

Submitted Under Third Circuit LAR 34.1(a)
October 14, 2003

Before:  SLOVITER, ROTH, and CHERTOFF, Circuit Judges

(Filed November 25, 2003)

———————

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is a Petition for Review filed by Zhu Feng Chen ("Chen") of the decision and order of the Bureau of Immigration Appeals ("BIA"), which affirmed without opinion the decision of the Immigration Judge ("IJ") denying Chen's request for asylum, withholding of removal and voluntary departure. We review the decision of the IJ when the BIA does not render its own opinion. Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002) (citation omitted).

## I.

Chen, a native and citizen of China, was married in 1985. After the birth of his daughter in 1986, his spouse was fitted with a mandatory IUD and subjected to periodic examinations. He claims that his wife, who became pregnant in early 1988, had a mandatory abortion on March 28, 1988 and was re-fitted with an IUD. When Chen and his wife learned she was pregnant again in November 1988, they left their village to stay with Chen's mother-in-law until their son was born in August 1989. The children and Chen's wife remained with her mother until they were discovered in a routine household registration check, whereupon they were brought back to Chen's village and, according to Chen, his wife was forced to undergo an involuntary tubal ligation. Chen was fined 5,000 RMB[1] for failing to observe a five-year spacing requirement in between children.

---

[1] Neither party has provided any information on the comparable United States currency.

2

When Chen arrived in the United States, he was not admitted or paroled after inspection by an immigration officer. The Immigration and Naturalization Service (INS) charged him as removable; Chen conceded removability and sought asylum, withholding of removal and voluntary departure. The IJ denied relief, the BIA dismissed the appeal, and Chen filed the Petition for Review before us now. We have jurisdiction pursuant to the Immigration and Nationality Act ("INA") § 242, 8 U.S.C. § 1252.

We will uphold the agency's findings of fact so long as they are supported by substantial evidence on the record. Gao, 299 F.3d at 272. Under this standard, the agency's adverse credibility determination must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." Id. (quoting INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B)).

## II.

Chen contends that he is entitled to asylum as a refugee because he suffered past persecution and because he has a well-founded fear of future persecution based on his opposition to the coercive population control program in China. The INA statute was amended to provide that "a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be . . . subject to persecution for

3

such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42)(B).

In denying Chen the relief he sought, the IJ stated that some of the facts set forth above were not supported by corroborating evidence. Chen contends that the decision of the IJ is not supported by substantial evidence, and he attacks in particular what he claims was the IJ's unreasonable requirement that he provide corroborating evidence of certain facts. He argues that although the IJ found him credible, the IJ denied him asylum because he failed to provide corroborating evidence. Chen also contends that the BIA erred by adopting the IJ's decision without determining whether it was reasonable for the IJ to require corroborating evidence.

Chen's argument is premised in large part on his belief that the IJ found him to be credible. The IJ did not make an explicit finding as to Chen's credibility. Chen relies on the IJ's statement that "I am not saying that the respondent does not have a wife, I am not saying that the respondent does not have two children. . ." The above statements by the IJ accepting the irrefutable facts that Chen has a wife and two children do not signify that the IJ found him to be credible.

It appears that the IJ, without explicitly questioning the dates of the "forced" abortion, may have considered the timing of the abortion to be improbable. On March 28, 1988 Chen's wife discovered she was pregnant with her second child at her check-up and was allegedly forced to undergo an abortion. Sometime between this date and November

4

1988 (when she discovered she was pregnant for an alleged third time), she had a second IUD inserted. But by November 1988 she had become pregnant again, despite the recent abortion and IUD insertion. A.R. at 30-31. The IJ's recitation of the precise dates suggests his incredulity, since within a six-month period, Chen's wife underwent a forced abortion and the insertion of an IUD, but nonetheless became pregnant. As the IJ stated,

> Now, this issue about when did the wife find out that she was pregnant was an area that was subject to some inquiry by the Court and also by the Trial Attorney. For instance it was not to [sic] clear whether the respondent's wife discovered that she was pregnant on the 28th, which is the date that the allege [sic] abortion was done, or that if she knew, in fact, that she was already pregnant on the 19th and yet, she went to the check up on the 28th, knowing that she was already pregnant. Since we do not have a certificate of the act, well, a medical procedure on that day. It appears that the only thing that the Court has is the testimony of the respondent.

A.R. at 30. (IJ at 4).

Chen argues that it was unreasonable of the IJ to require corroborating evidence. We have stated that in deciding whether corroborating evidence is necessary, the IJ or the BIA should: (1) identify the facts for which "it is reasonable to expect corroboration;" (2) inquire as to whether the applicant has provided information corroborating the relevant facts; and, if s/he has not, (3) analyze whether the applicant adequately explained the failure to do so. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001) (citations omitted).

In two recent opinions, both of which were decided by this court after Chen's brief was filed, we considered the connection between findings of credibility and the need for corroboration. In Kayembe v. Ashcroft, 334 F.3d 231 (3d Cir. 2003), where we assumed

5

that Kayembe's testimony was credible (although the IJ had found he was not credible), we remanded to the BIA because its opinion (unlike that of the IJ) said nothing about corroboration, and therefore we were unwilling to read a requirement of corroboration into its opinion. See id. at 238. We further stated that "[t]he BIA in this case has failed even to provide us with clues that would indicate why or how Kayembe failed to meet his burden of proof." Id. at 238. As a result of the BIA's failure to provide us with those clues, we found it impossible to meaningfully review its decision. This is not such a case.

Similarly in our later decision in Miah v. Ashcroft, 346 F.3d 434 (3d Cir. 2003), we held that the BIA failed to properly analyze the issue of corroboration when it neglected to explain the particular aspects of the petitioner's testimony for which it would have been reasonable to expect corroboration. See id. at 439. That is not the situation in this case.

The IJ did not question Chen's assertion that his wife had an abortion, but noted the failure of Chen to provide an abortion certificate because, as the IJ stated, the certificate was needed to ascertain whether the abortion "happened when [Chen] indicated it happened, between the birth of the first and the second child." App. at 35 (emphasis added). Chen's testimony regarding the availability of an abortion certificate was ambiguous. He states that the officials did not issue an abortion certificate at the time of the abortion, that his wife went back to get one some time after the procedure, but did not answer whether or not she ever acquired the certificate because it involved a

"women's issue," which he did not ask about. App. at 135. There may be some merit to Chen's argument that it was unreasonable of the IJ to require him to produce corroborating evidence of a certificate of abortion when such evidence was not available, but there are other items that were not introduced that support the IJ's reluctance to accept Chen's story.

For example, the IJ pointed to the tubal ligation. The statute identifies "involuntary sterilization" as one of the bases for asylum based on a well-founded fear of persecution on account of political opinion. The IJ said the evidence satisfactorily demonstrated that Chen's wife underwent the tubal ligation, but that it was not clear whether it was involuntary or "because the[] couple had decided that they . . . did not want any[]more children." App. at 35. The IJ also stated that the documents missing from the case were extremely important for his final analysis. The IJ explained that "that creates a major doubt in [his] mind . . . as to the actual reasons why the tubal ligation did happen when it happened. Especially, since we are dealing with children that were born in 1989 and 1986." Id. It is clear that the IJ believed that Chen had not satisfactorily shown that the tubal ligation was involuntary. The IJ examined the certificate of tubal ligation that Chen produced, and he accepted the fact that the certificate verifies that Chen's wife has undergone a tubal ligation. However, the IJ noted that the certificate referred to Fuzhou No. 1 Hospital but pointed out that Chen "admitted clearly that this was not the hospital where his wife underwent the operation." The IJ stated, "I am just

7

saying that on the facts that I have before me, there is no connection between the actions taken by the government, if any, to force her to undergo the tubal ligation. There is a theory here that could be interpreted as one that shows that that operation was done voluntarily and since, that has not been established to the satisfaction of the Court, what I mean by that, is that he has not been disapproved to the satisfaction of the Court, I find that the respondent has not met his burden of establishing the necessary elements of his claim." App. at 36-37.

The IJ also noted that corroborating evidence was missing of "[t]he fine or the alleged fine that the family unit received for 5,000 RMB." App. at 35. Thus, notwithstanding Chen's assumption that the IJ found him credible, the IJ's references to his "doubt" as to the reasons for Chen's wife's tubal ligation and the IJ's comments with regard to the fine suggest that the IJ had reservations about Chen's testimony.

The IJ was also skeptical of Chen's contention that he was persecuted in the past and had a well-founded fear of future persecution based on his opposition to China's population control measures. Chen contends that he articulated his resentment towards the family planning policies to fellow villagers at various times and states that he presented his views in 1997 to a journalist who was doing a story on Chen's village as the model village for local family planning policy. He states that as a result of this incident, he was called into the family planning office and warned to keep his feelings quiet. A heated argument between Chen and the officials erupted, and Chen alleges he was hit on

8

the head with a chair by an official because he would not leave when directed to do so. The IJ concluded that because there is no record or report of the interview given by Chen to the local reporter, "the interview either never happened or . . . the importance that the authorities gave to that interview did not amount to to [sic] much." App. at 36.

The IJ accepted that Chen expressed "some ideas of opposition to the . . . birth control policy of his country," but the IJ did not find "that the necessary link in terms of any actions or official actions taken against him were based on those alleged opinions or expressions of his opinion about this particular issue." App. at 35-36.

We do not read the IJ's decision to hold that Chen's failure to provide corroborating evidence per se was the basis for the denial of asylum. Instead, the failure to provide factual support for his position provided the basis for the IJ's implicit finding that Chen lacked credibility. We cannot fault the IJ for requiring Chen to produce evidence to support his claim that he is a refugee. The statute that gives the Attorney General the authority to grant an asylum petition clearly provides that the persecution must be "on account of" a specific ground provided in the statute. 8 U.S.C. § 1101(a)(42)(A). Chen has not shown that he was persecuted on account of his resistance to a coercive population control. Although we may assume that he was called to the family planning clinic, the IJ noted "the action taken against him . . . which would have been so probative of his opinion, did not appear to the Court to be serious enough." App. at 36. While there was a physical confrontation at the end of that interview, there is no

9

evidence that Chen was assaulted because of his opinion. Instead, it appears that the physical contact resulted from Chen's failure to leave the office when directed. Similarly, Chen has not produced evidence that his interview with the reporter was known to the relevant Chinese authorities who could have taken repressive action against him.

It is true that in Abdulai, Kayembi and Miah we remanded because we were unconvinced by the IJ or BIA's expressed need for corroboration. Unlike those cases, here, the IJ albeit somewhat less specific than desirable, identified the items that required corroboration. All three of our prior cases recognized that the BIA [or the IJ] may require applicants "to supply corroborating evidence in order to meet their burden of proof. Abdulai, 239 F.3d at 554; Kayembi, 334 F.3d at 238, and Miah, 346 F.3d at 439. It was not unreasonable in this case for the IJ to require some corroboration of at least some of Chen's testimony.

It is not insignificant to the issue whether Chen has a well-founded fear of future persecution that his wife and children are still in China, he sends money for their support, and the children "who are 10 and almost 14 years of age are attending school." App. at 33. Admittedly, the IJ's opinion is somewhat difficult to follow, probably in part because it was delivered orally. We cannot, and should not, remand merely because he failed to make explicit his lack of credibility finding. In short, we find no basis to disagree with the IJ's conclusion that Chen "has not met his burden of establishing the necessary elements of his claim." App. at 37. Thus, there is a basis in the record to support the IJ's

decision. There is enough in the record from which we can decide this matter.

### III.

For the reasons set forth above, we will deny Chen's petition for review.

_____

TO THE CLERK:

Please file the foregoing opinion.

/s/ Dolores K. Sloviter
Circuit Judge

CHERTOFF, Circuit Judge, dissenting.

I must respectfully dissent.

This Court has emphatically reiterated that although we review a decision of the Immigration Judge (IJ) or the Board of Immigration Appeals (BIA) under a deferential standard, there must be some explanation for us to review. See Abdulai v. Ashcroft, 239 F.3d 542, 555 (3d Cir. 2001). In particular, we have held that the IJ or BIA "should give specific reasons for [the] determination that a witness is not credible." Balasubramanrim v. INS, 143 F.3d 157, 162 (3d Cir. 1998). In the absence of a credibility finding, we assume credibility, and decide whether the IJ or BIA decision is supported by substantial evidence in light of that assumption. Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir.

11

2003).  Also, while the IJ or BIA may require corroboration of the applicant's account, the decisionmaker must (1) identify the facts for which corroboration reasonably may be expected; (2) explain whether the applicant has furnished corroboration for those facts, and (3) address whether "'the applicant has adequately explained his or her failure to do so.'" Miah v. Ashcroft, 346 F.3d 434, 439 (3d Cir. 2003) (quoting Abdulai).  In essence, then, we interpret the law to require identification of the essential facts of the claim, analysis of the evidence presented, assessment of the credibility of the applicant, and consideration of the need for specific corroboration.

Here, despite heroic efforts by the majority to discern a coherent analysis in the oral opinion of the IJ, that oral opinion does not come close to meeting these requirements.

At the outset, the IJ's view of the credibility of applicant Chen is a mystery.  The majority reads the IJ's decision as an "implicit finding" that Chen lacked credibility based on a "failure to provide factual support."  Majority Op. at 9.  But the Government itself—defending the decision in this Court—proceeds on the opposite assumption that the IJ found Chen to be credible.  Appellee Br. at 18.  This matters, of course, because the determination of credibility affects the corroboration analysis.  Miah, 346 F.3d at 440.

Worse yet, if the IJ did find a lack of credibility based on a "failure to provide factual support," that itself is an error.  As we observed in Abdulai, the BIA has ruled

12

that an adverse credibility determination cannot be based on a "failure of proof," but "is more appropriately based on inconsistent statements, contradictory evidence, and inherently improbable testimony." 239 F.3d at 551 n.6 (quoting In re S-M-J-, Interim Decision 3303 (BIA 1997), available at 1997 WL 80984). Nothing in the IJ's opinion ties any of these characteristics to a finding on credibility. Without articulated reasons, this Court cannot determine whether the "reasons . . . bear a legitimate nexus to the finding." Balasubramanrim, 143 F.3d at 162.

Turning to corroboration, the IJ found flaws in each of the three grounds invoked by Chen's application. Chen claimed refugee status because (1) his wife was allegedly forced to abort a pregnancy; (2) she was later involuntarily sterilized; and (3) he purportedly expressed opposition to China's forcible population control measures. Under the statute, any of these claims, if true, would establish refugee status that would entitle the applicant to be considered for asylum.

I agree with the majority that the IJ adequately explained his rejection of the third claim. Not so as to the first and second claims, however.

Regarding the allegedly forced abortion, the IJ questioned the lack of documentary support for the timing of the abortion. As the majority reads the IJ's opinion, "[i]t *appears* that the IJ, without explicitly questioning the dates of the 'forced' abortion, *may have considered* the timing of the abortion to be improbable. . . . The IJ's recitation of the precise dates *suggests* his incredulity . . . ." Majority op. at 5 (emphasis

13

added).  I note in passing that the use of words like "it appears," "may have considered" and "suggests his incredulity" demonstrates that the majority was obliged to divine the IJ's findings because they were never made explicit.  At any rate, what is totally absent from the IJ's opinion is any explanation of why the timing of the abortion is improbable, what difference the timing makes, and how documentation of the date of the abortion would shed light on these issues.

The IJ suggests that the timing question is whether Chen's wife only discovered that she was pregnant on the date the abortion was done, or whether she thought she was pregnant before she went to the hospital for a check up on that day.  After posing that conundrum, the IJ concludes: "Since we do not have a certificate of the act, well, a medical procedure on that day . . . [i]t appears that the only thing that the Court has is the testimony of the respondent."  A.R. at 30.   Why is the date when Chen's wife first suspected she was pregnant probative of the mandatory or voluntary nature of the abortion?  I can guess—but the IJ never says.  More important, the IJ does not explain why a certificate showing the date of the abortion would shed any light on when Chen's wife first thought she might be pregnant.  Put in the language of <u>Abdulai</u>, why would it be "reasonable to expect [Chen] to corroborate" his wife's subjective awareness of her pregnancy with a certificate memorializing the date of the abortion?  239 F.3d at 554.

That is not the end of the immigration authorities' analytical failures on this point.  As explained in <u>Abdulai</u>, the IJ or BIA were also supposed to address whether Chen

14

adequately explained his failure to furnish this supposedly corroborative abortion certificate. Before the BIA, Chen submitted a State Department report stating that Chinese authorities do not issue abortion certificates for involuntary abortions. A.R. at 7.[2] If so, that would seem a pretty persuasive reason why no such certificate could be provided to corroborate an involuntary abortion. Since this State Department report was not presented until the appeal to the BIA, the IJ can be excused for not addressing this. But the BIA—which affirmed without opinion—cannot.[3]

The IJ's discussion of the forced tubal ligation—sterilization—is even more opaque. As the majority notes, the IJ found documentary corroboration that Chen's wife underwent the sterilization, but said he could not determine whether it was involuntary or not. Of course, Chen testified that it was forced. And, significantly, the IJ acknowledged that the tubal ligation procedure was corroborated with documents. A.R. at 32, 35. But the IJ continued:

---

[2] Chen referred the BIA to page 24 of the 1998 State Department Report "China: Profile of Asylum Claims and Country Conditions," which provides: "The U.S. Embassy and Consulates General are unaware of any so-called 'abortion certificates,' which often are presented as part of asylum applications as evidence of a forced abortion. According to Embassy officials, the only document that might resemble such a certificate and result in confusion is a document issued by hospitals upon a patient's request after a voluntary abortion. This certificate is used by patients as evidence to request 2 weeks of sick leave after an abortion has been performed . . . ." A.R. at 263b.

[3] Because the BIA issued no opinion, it cannot rely on the argument that it did not address this issue because it was waived before the Immigration Judge. And the BIA cannot justify ignoring or overlooking relevant evidence by hiding behind its summary affirmance procedure.

15

[T]hat is when the other documents that are missing . . . from this case become extremely important for my final analysis. The fine or the alleged fine that the family unit received for 5,000 RMB and the certificate of abortion or the statement indicating that the abortion had, in fact, happened when the respondent indicated it happened, between the birth of the first and the second child. [sic] For some reason are not here. And, that creates a major doubt in the mind of the Court as to the actual reasons why the tubal ligation did happen when it happened. Especially, since we are dealing with children that were born in 1989 and 1986.

A.R. at 35.

Why does the absence of these documents about the abortion or the fine create a doubt about the involuntariness of the tubal ligation? If the (nonexistent) abortion certificate evidenced that the forced abortion occurred in 1988, how would that be probative of the voluntariness of the 1989 sterilization? What is the significance of the fine for all this? Does the payment of a fine make it more or less likely that the sterilization was compelled? Again, I could speculate about these matters, but that is precisely what our cases teach that a reviewing court should not do. The IJ has the obligation to explain why facts—such as the date of the abortion—are significant, and what corroboration can reasonably be expected.

Perhaps the applicant in this case cannot meet his burden of proof and the IJ could explain why. But the IJ has not. I appreciate the workload carried by the Immigration Judges, and recognize that it is unreasonable to insist upon polished or even written opinions. But the deference which we owe to the administrative judges requires that they express findings and judgments to which we can defer. If we are obliged to

reconstruct their decisions in order to affirm them, the result is not deference to those decisions, but a transfer of decisional authority to this Court.

I would remand this case to the BIA for further proceedings.